GkeeN, J.
delivered the opinion of the court.
This is an action of detinue for a negro man slave named Jim. It appears from the bill of exceptions, that the defendants are a Justice of the Peace, a Constable, and a Jailor of the town of Nashville. A watchman apprehended the negro Jim, a slave of the plaintiff, for violating the corporation ordinance of Nashville, in hiring his own time, and carried him before the defendant, Ferris, a justice of the peace.— Whereupon the justice of the peace entered up the following judgment: “Corporation vs. Henry Baldwin’s boy Jim—committed to jail in consequence of - a violation of the laws of the corporation, and the owner refusing to pay the fine.
“21st February, 1843. JOSIAH FERRIS, J. P.”
The said justice also issued the following mittimus: “To the jailor of Davidson county: Whereas, Jim, the property of Henry Baldwin, as attorney in fact, for Mary F. Baldwin, has been arrested on a charge of hiring his own time, and it appearing to be the case on examination, this is to command you to receive the said boy, and him safely keep until legally disposed of; this 21st February, 1843.
“JOSIAH FERRIS, J. P., [seal.]”
The negro Jim belongs to J. W. Hoggatt, the plaintiff, who holds him in trust, for Mary F. Baldwin; and Henry Baldwin is agent and attorney to manage said trust property.
There was evidence tending to show that the negro Jim had been in the habit of hiring his own time.
It was proved by Edwin H. Ewing, Esq., that on some occasion, (he does not recollect the precise time) he was sent for by the defendant, Ferris, who took his advice in relation *238 to a case against a slave of Mr. Baldwin for an alleged violation of the corporation laws, and that he advised that Mr. Baldwin was not liable for the fine, and that if any proceeding could be sustained under the 11th section of the corporation ordinance of 1840, it must be a proceeding against the slave, and by imprisonment of him. The defendant read a copy of the corporation ordinance of 1840, the 11th section of which provides, “that it shall not be lawful for any slave to hire his or her own time within the limits of the corporation, and if any slave shall presume to hire his or her time, a penalty of twenty dollars is hereby imposed, and there shall also be allowed to the officer for apprehending such slave, two dollars, and should the owner of such slave refuse to pay such penalty and charge, such slave shall be committed to prison, there to remain at the charge of the owner, until said penalty is paid, together with all costs.”
The court charged the jury, “that this action was brought against a justice of the peace, a constable and a jailor for acts appearing to have been done in their official capacity; that if the justice of the peace who ordered Jim to be committed to prison, had jurisdiction of the case in which he was committed, that that would be a justification of the constable who took him to jail, and of the jailor who received him and detained him by virtue of the mittimus; that a justice of the peace, or a judicial officer was not liable for the consequences resulting from the performance of an official act, when such justice of the peace, or judicial officer had jurisdiction of the case in which the act was performed, unless that jurisdiction was exercised in such a rash manner as to evince that he was actuated from maliee, or as to amount, to a gross abuse of the power with which the law had invested him, of which he was himself conscious; that in no case is a justice of the peace or other judicial officer liable to be sued by a party who may be damnified by his judgments proceeding from mere error of judgment, or from honest misapprehension of the law, or of the facts; that in this case the arrest of Jim, and the bringing him before Josiah Ferris, a justice of the peace, gave the said Josiah Ferris jurisdiction of the offence charged against him, and if he believed him *239 guilty from the evidence adduced before him, o he had the authority to commit him.” The jury found for the defendants.
The plaintiff moved for a new trial, which was refused, and the plaintiff appealed to this court.
The only question is, whether the justice, of the peace had jurisdiction of the case against the slave Jim, whom he committed to prison; for it is not contended that a judicial officer is -responsible for mere errors of judgment in a case of which he has jurisdiction, and in which, without'malice,, he honestly pronounces what he believes to be the judgment, of the law.
The negro Jim was-proceeded against under the 11th section of the ordinance of the. Nashville corporation, 1840, which imposes a fine of twenty dollars foiv a slave hiring his own time, and imprisonment of the slave if the owner refuse to pay the fine.
This Ordinance is not repugnant to the State Law. The act of 1777, ch. 6, sec. 5, (C. and N.) 675, provides that if a slave be allowed to hire his own time, he shall be taken up by any magistrate or freeholder, and be kept at hard labor for the use of the poor, for a period not exceeding, twenty days.'
The Ordinance in question, is expressly authorized by an act of the legislature of the State; passed “for the regulation of-the town of Nashville,” 10th November, 1801, where power is given the corporation to “prevent negroes from hiring their time, or keeping tippling houses.”
It appears by a reference to these acts of the legislature, that the policy of the Ordinance in question, is in accordance with the legislation of the State, and within the powers conferred on the corporation. But it is, insisted that this Ordinance is insensible and absurd in its terms. We do not think so. There are various provisions in the Ordinance upon the subject of slaves and freé negroes; but the framers of the law perceived that cases might exist in which the corporation law could not be executed on the owner of a slave.— These laws have no obligatory force beyond the boundary of the corporation, and if the owne.r of a slave,, not residing in Nashville, permit his slave to go at large in Nashville, the only method- by which the corporation could protect itself, *240 would be, to take hold of the slave and indemnify itself either by his labor for its use, as the State law prescribes, or by its retaining him in custody until the master shall choose to discharge him by the payment of the fine imposed as the Ordinance in this case prescribes.
With this latter view, the Ordinance in question was framed, and we think pertinently and properly. It prescribes that if a slave hire his own time, a fine of twenty dollars shall be imposed, and he shall be committed to prison unless the owner shall pay the fine and costs. The fine is not imposed upon the slave in terms, for he has nothing by which he can discharge it, nor is it imposed upon the master in terms, because the corporation may not have jurisdiction over him; but it is imposed, and the slave is committed until the owner pay it.
This, it seems to us, is a very sensible and effective mode of collecting the fine in many cases where otherwise the prohibition would be wholly inefficient.
Whether the provision of the State law, that the slave shall be made to work for the benefit of the public, would have been an adequate remedy, was a matter for the discretion of the corporation. Doubtless,. it was considered, that in such case, the slave would run away while thus employed, and going beyond the jurisdiction of the corporation would wholly defeat its remedy.
2. The only remaining question is, whether a warrant to apprehend a slave charged with hiring his time, is indispensable in order that a justice of the peace shall have jurisdiction of the case. And, we think it is not. The judgment states the case, the offence charged, and the decision of the justice. The mittimus recites the offence charged and the non-payment of the fine by the' owner. If a misdemeanor were committed, and the party being apprehended without warrant and brought before a justice of the peace for trial, it would not be necessary for him then to frame a warrant in order to his jurisdiction of the case. Why issue a warrant for the apprehension of a party already in custody? So in this case — Jim was brought before the justice by the watchman, charged with having hired his time. This was done by *241 the watchman in pursuance of his duty as prescribed by the laws of the corporation. Being thus before the magistrate, charged with the offence, he had jurisdiction to proceed to judgment. An attempt is made in the argument to connect a warrant against Henry Baldwin with this case, by referring to the original docket of the defendant Ferris, and certain erasures there appearing. We cannot notice that docket. It is no part of this record. The .plaintiff might have proved the facts appearing on the docket, and, by incorporating such proof in the bill of exceptions, have brought up the question he now attempts to raise before us. But as it now appears we cannot notice it. Affirm the judgment.